# United States District Court

**SOUTHERN** DISTRICT OF **FLORIDA**

UNITED STATES OF AMERICA

V.

ANTONIO SHANARDO MCKENZIE

## CRIMINAL COMPLAINT

CASE NUMBER: 08-3074-AMS

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or around early August of 2008, and continuing through on our about August 13, 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, ANTONIO SHANARDO MCKENZIE, using a facility and means of interstate commerce, that is, cellular telephones, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b).

I further state that I am a Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

ALVIN M. WINSTON, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me, and subscribed in my presence,

August 18, 2008                    at    Miami, Florida
Date                                      City and State

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer        Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Alvin M. Winston, being duly sworn, depose and say:

1. I am currently employed as a Special Agent with the Federal Bureau of Investigation (FBI), Miami, Florida, and have been employed as such for the past thirty months. Before being employed by the FBI, I worked as a homicide detective with the City of Atlanta Police Department and chief investigator with the Fulton County District Attorney's Office. My employment with the FBI has vested me with the authority to investigate violations of federal laws, including enticing a minor to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b).

2. The facts of this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation obtained from other law enforcement officers while in my official capacity. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint against ANTONIO SHANARDO McKENZIE (a/k/a "T.O."), it does not include every fact known to me in connection with this investigation.

3. On August 13, 2008, while working in an undercover capacity, a Miami-Dade Police detective made contact with an individual purporting to be Shanika Johnson. At the time of contact, the individual purporting to be Johnson offered oral sex and straight sex for $80.00, at which time she was arrested and charged with prostitution. After confirming her true identity (hereinafter "N.G."), it was revealed that "N.G." was a minor, (date of birth - December 28, 1990), who resided in Hallandale Beach, Fl.

4. Law Enforcement interviewed "N.G." who, among other items of information, stated the following:

   a. In early August 2008, "N.G." met McKENZIE as she was walking to a Winn Dixie Grocery Store located in Hallandale Beach, Florida. After being offered a ride by McKENZIE, "N.G." entered

McKENZIE's vehicle. After McKENZIE introduced himself to "N.G." as "T.O.," McKENZIE asked "N.G." if she ever, "Worked in the streets before." "N.G." responded by saying, "Yeah," at which time McKENZIE started to discuss the possibility of "N.G." working for him as a prostitute.

b. During this discussion, McKENZIE asked "N.G." her age, at which time "N.G." informed him that she was 17 years-old. McKENZIE then asked "N.G." if she was happy with where she was living. McKENZIE went further to state that he could provide "better things" for "N.G.," and if she made the money, he would "organize" things. It was also during this conversation that McKENZIE provided "N.G." with rules that she must follow as a prostitute. These rules were: (1) "N.G." couldn't talk to other pimps, (2) She had to meet a quota of $500.00 per night, made by either dancing or turning tricks, and (3) "N.G." couldn't keep money from him. After this discussion, McKENZIE and "N.G." exchanged cellular phone numbers, and McKENZIE took "N.G." to her residence.

c. On the same day, a few hours after McKENZIE dropped "N.G." off at her residence, McKENZIE called and spoke with "N.G." on her cellular phone. During this conversation, "N.G." related to McKENZIE that she was home alone, and it was agreed that McKENZIE could come back to the residence. Once McKENZIE arrived, "N.G." and McKENZIE engaged in unprotected consensual vaginal sexual intercourse. After having sexual intercourse with "N.G.," McKENZIE continued to discuss the possibility of "N.G." working as a prostitute for him. McKENZIE stayed at the residence for approximately two hours and then left.

d. According to "N.G.," she and McKENZIE agreed that she would "pack her stuff," and they would leave and go stay in a hotel room. In several conversations leading up to "N.G." agreeing to leave her residence, McKENZIE told "N.G." that he loved her, and that they would save up enough money to get a house and a car. Several days later, "N.G." packed some clothing items, and left her residence to stay at the Chesapeake Hotel, located at 935 West Okeechobee Road, in

Hialeah, Florida with McKENZIE.

e. While staying at the Chesapeake Hotel, McKENZIE took "N.G." to P T's strip club, where she auditioned, and was subsequently hired as a nude dancer. At the time of employment, "N.G." provided a staff member with a Florida Identification Card belonging to her mother, at which time the staff member photocopied the identification card and gave it back to "N.G." While dancing at this strip club, "N.G." utilized a stage name of "Baby Doll." "N.G." did not have sex with any of the patrons while working at this club and gave all the proceeds from her working as stripper to McKENZIE. After staying at the Chesapeake Hotel for several days, McKENZIE and "N.G." relocated to the Davis Motel located at 6500 Biscayne Boulevard in Miami, Florida.

f. During their stay at the Davis Motel, McKENZIE put "N.G." on the "track" to work as a prostitute, instructed her to charge $100.00 for oral and vaginal sex, recruit other prostitutes who looked as if they had nowhere else to go, and provided her with Durex and Rough Rider condoms for her clients to use. McKENZIE stayed in regular contact with "N.G" using cellular telephones. According to "N.G.," she worked on the "track" daily and averaged approximately $400.00 to $500.00 a night. All proceeds derived from "N.G." committing acts of prostitution were given to McKENZIE. It was also during this week that "N.G." refused to work because she was not feeling well. McKENZIE attempted to persuade "N.G." to go and work for a short while. When "N.G." refused, McKENZIE choked "N.G." until she lost consciousness. Once "N.G." regained consciousness, she found McKENZIE performing oral sex on her. "N.G." also was gainfully employed at the Goldrush strip club, as a nude dancer. All proceeds derived from "N.G." working as a stripper were given to McKENZIE. After several days at the Davis Motel, McKENZIE and "N.G." relocated to the Seven Seas Motel, located at 5490 Biscayne Boulevard, in Miami, Florida.

    g. While at this motel, McKENZIE recruited an 18 year-old female, "B.J.", whom "N.G." believed was a minor. While grooming Jones to become a prostitute, McKENZIE, "B.J.", and "N.G." engaged in a three way sex act at the direction of McKENZIE.

5. After "N.G." provided the name and date of birth of McKENZIE, "N.G." was shown a photograph, at which time she made a positive identification. A subsequent preliminary investigation on McKENZIE revealed that he was wanted for violating probation. It was at this time that contact was made with McKENZIE at the Seven Seas Motel, in room 105. Upon entering the room, it was noted that McKENZIE was lying in the bed next to Jones, who was nude.

6. Based on my training and experience, and as further supported by the facts in this affidavit, your Affiant respectfully submits that there is probable cause to believe that ANTONIO SHANARDO MCKENZIE, using a facility and means of interstate commerce, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

    I declare under penalty of perjury that the foregoing is true and correct.

                                              Special Agent Alvin M. Winston
                                              Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this _18th_ day of August 2008

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 08-3074-AMS

UNITED STATES OF AMERICA

vs.

ANTONIO SHANARDO MCKENZIE,

Defendant.
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
Barbara A. Martinez
Assistant United States Attorney
Court ID No. A5500536
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9146
FAX (305) 530-7976
Barbara.Martinez2@usdoj.gov